UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CPC ACQUISITIONS, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | No. 07 C 702 |
| v. | ) | |
| | ) | Senior U. S. District Court Judge |
| BRENDA HELMS, | ) | George W. Lindberg |
| | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM AND ORDER**

Appellant CPC Acquisition, Inc. (CPCA) appeals from the United States Bankruptcy Court, Northern District of Illinois, Eastern Division's judgment that appellee Trustee Brenda P. Helms (Trustee) has exclusive right, title and interest to an $88,000 settlement arising from Certified Packaging Corp.'s (Certified) insurance company's negligent procurement of an insurance policy (Rothschild settlement), and also to any proceeds from the pending case between Certified and Commonwealth Edison (ComEd) except proceeds recovered for damage to CPCA's collateral. For the reasons set forth below, the Bankruptcy Court's judgment is affirmed in part and reversed in part.

In March 2000, Certified took out a loan from CIT Group/Business Credit, Inc. (CIT). This loan was secured by a lien granted to CIT over Certified's assets. CIT assigned its interest to LaSalle Bank, N.A. (LaSalle) in June 2001.

In late 2000, Certified's North Chicago plant caught fire. Certified's insurance company denied coverage due to the insurance broker's failure to include the North Chicago plant in the insurance policy. Certified sued the insurance company and settled, recovering $88,000 (the

Rothschild settlement) for the company's negligent failure to insure Certified's North Chicago plant.  Additionally, Certified filed a complaint against ComEd alleging that ComEd's negligent maintenance of utility and power lines caused the fire in Certified's plant.  Certified is seeking recovery from ComEd for damage to its personal property as well as for business interruption losses in the total amount of two million dollars.  This ComEd case is currently pending in the Circuit Court of Cook County.

This appeal arose out of the bankruptcy case of Sarah Michaels, Inc., Sarah Michaels, LLC, and Fasma, LLC (Debtors).  Brenda P. Helms (Trustee) was appointed Chapter 7 trustee of the debtors' bankruptcy estate in February 2004.  LaSalle sold its security interest to CPCA, the intervenor in this proceeding, in January 2006.  Trustee initiated this adversary proceeding against Certified, and Certified consented to a Citation lien in favor of the Trustee and agreed not to challenge the validity of the Citation.  CPCA intervened, alleging a security interest over Certified's assets listed in CPCA's security agreement with Certified.  Both Trustee and CPCA claim the amounts recovered in the Rothschild and ComEd actions as assets subject to their own liens.

The Bankruptcy Court determined that CPCA did not have a lien over the $88,000 Rothschild settlement and proceeds recovered from the ComEd action other than any proceeds recovered for damage to CPCA's collateral.

In its amended designation of the record on appeal, CPCA appealed the following three issues: whether the Bankruptcy Court erred as to its ruling (1) on proceeds; (2) regarding the Composite Documents Rule; and (3) on "payment intangibles."

07 C 702

In its brief, CPCA raises four issues on appeal arguing that: (1) the $88,000 Rothschild settlement arising out of the insurance company's alleged negligent failure to insure damaged collateral covered by LaSalle's Security Agreement constitutes "proceeds" under 810 Ill. Comp. Stat. 5/9-102(a)(64); (2) amounts recovered on account of business interruption losses constitute "proceeds" of collateral under 810 Ill. Comp. Stat. 5/9-102(a)(64); (3) in the alternative, that Certified's notice to LaSalle of the Rothschild settlement and ComEd action was sufficient for LaSalle's security interest to attach to these commercial tort claims; and (4) even if Certified's notice was insufficient, the Bankruptcy Court should have applied the Composite Documents Rule and examined documents outside the Security Agreement to ultimately hold that the bank's security interest attached to these commercial tort claims. CPCA did not raise the issue of "payment intangibles" in its brief.

In this appeal, this Court will review the Bankruptcy Court's factual findings for clear error, Fed.R.Bankr.P. 8013, and its conclusions of law *de novo*, *Matter of UNR Industries, Inc.,* 986 F.2d 207, 208 (7th Cir. 1993).

CPCA first argues that the $88,000 Rothschild settlement constitutes "proceeds" of damaged collateral under 810 Ill. Comp. Stat 5/9-102(a)(64). Trustee argues that CPCA waived the issue by not raising it in the Bankruptcy Court in these exact words or, in the alternative, that this court should affirm the Bankruptcy Court's ruling on the merits.

As to waiver, Trustee states that CPCA argued to the Bankruptcy Court only that the Rothschild settlement constitutes insurance proceeds or proceeds of the collateral damaged in the fire, but not that the Rothschild settlement is proceeds of the insurance policy, which is itself original collateral. While arguments not presented to the trial court are waived if raised for the

3

first time on appeal, *In re Kroner,* 953 F.2d 317, 319 (7th Cir. 1992), the difference between these two arguments is not one of substance, but rather of form. Regardless of how CPCA frames the issue, CPCA is arguing that the Rothschild settlement constitutes "proceeds" from damaged collateral under 810 Ill. Comp. Stat. 5/9-102(a)(64). CPCA did not waive this issue.

As to the merits, this Court reverses the Bankruptcy Court's judgment that the Rothschild settlement does not constitute proceeds under 810 Ill. Comp. Stat 5/9-102(a)(64). According to the statute, "proceeds" are:

> (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
>
> (B) whatever is collected on, or distributed on account of, collateral;
>
> (C) rights arising out of collateral;
>
> (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
>
> (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

810 Ill. Comp. Stat. 5/9-102(a)(64). The Bankruptcy Court held that the Rothschild settlement cannot be insurance proceeds under subsection (E) because Certified was not insured due to the faulty insurance policy. Furthermore, the Bankruptcy Court rejected CPCA's argument that the Rothschild settlement is proceeds of damaged collateral because the cause of action was one for professional negligence and in no way arose out of damage to the collateral. Had the insurance company properly insured Certified, the insurance money recovered due to the damaged collateral would constitute insurance proceeds under subsection (E) above. The Bankruptcy

Court failed to recognize that the Rothschild settlement merely compensated for the amount the insurance policy would have paid out if it had been properly written.

Moreover, pursuant to subsection (D), "proceeds" include, "to the extent of the value of collateral, claims arising out of the loss . . . of . . . or damage to, the collateral." But for the fire in Certified's plant and the resulting damage to the collateral, there never would have been a Rothschild action or settlement; thus, the Rothschild action arose out of the damage to the collateral. The Rothschild settlement constitutes "proceeds" under 810 Ill. Comp. Stat. 5/9-102(a)(64) and CPCA has a security interest in those proceeds. See *In re Wiersma*, 324 B.R. 92, 106 (9th Cir. BAP 2005) ("[L]awsuit settlement proceeds stemming from destruction of collateral are considered to be proceeds of the original, damaged collateral."), reversed in part on other grounds, 483 F.3d 933 (9th Cir. 2007). Therefore, the Bankruptcy Court's judgment as to the Rothschild settlement is reversed.

CPCA next argues that any amounts recovered on account of business interruption losses from insurance and the ComEd action are "proceeds" of the collateral and that CPCA has priority over Trustee to any such recovery. Again, Trustee argues that this issue is waived on appeal due to CPCA's failure to properly frame the issue in the Issues Presented section of its brief. Trustee cites *Ehrhart v. Sec. of Health and Human Servs*. for the proposition that any issue that compels the court to engage in a "burdensome and fruitless scavenger hunt for arguments" should be deemed waived. 969 F.2d 534, 537 (7th Cir. 1992). However, despite CPCA's somewhat confusing wording of the issue, CPCA states in its Argument Section that it is seeking amounts recovered on behalf of business interruption losses as "proceeds." A

burdensome and fruitless scavenger hunt for CPCA's arguments is not required to consider this issue. Contrary to Trustee's assertions, CPCA has not waived this issue.

Nonetheless, this Court affirms the Bankruptcy Court's judgment that CPCA does not have a superior lien over amounts recovered on account of business interruption losses because these losses do not constitute collateral as defined by the Security Agreement and amounts recovered on account of them do not constitute "proceeds" of collateral under the Illinois statute.

Section 4.3 of the Second Amended Security Agreement states that "'Collateral' shall mean all of the following personal property of Borrower." CPCA claims to have a blanket lien over all of Certified's "assets and operations." But, the Security Agreement's definition of collateral includes only personal property and does not include operations or business interruption losses.

Pursuant to its alleged blanket lien over all of Certified's assets and operations, CPCA argues that amounts recovered on account of business interruption losses constitute "proceeds" of damaged collateral under the Illinois statute. CPCA fails to state which subsection of the "proceeds" statute amounts recovered on account of business interruption losses fall under. The Illinois "proceeds" statute subsections (D) and (E) both limit proceeds to "the value of the collateral." "Proceeds" then may not exceed the fair market value of the collateral, i.e., the amount which a willing a seller and a willing buyer would agree to for the sale of the collateral.

CPCA relies on the opinion of the four justice majority in the Washington Supreme Court's *Rainier National Bank v. Bachmann* case in support of its arguments that its lien extended to the amounts recovered on account of business interruption losses. 757 P.2d 979 (Wash 1988). That opinion is not binding on this court, being persuasive at best. And this court

finds Justice Dore's opinion for the three dissenting justices to be far more persuasive than the majority opinion. Justice Dore's dissent explains at some length why, using the factual context of the *Rainier* case, proceeds are limited to the value of the collateral and do not include amounts recovered on account of business interruption. 757 P.2d at 985.

In *Rainier*, the bank had a security interest in the dairy herd of the Bachmanns. The Bachmanns chose to participate in the federal Dairy Termination Program (DTP), pursuant to which they went out of the dairy business, selling their herd for slaughter, and received payments for staying out of the milk production business for five years. As the dissent stated:

> The majority's holding that the DTP is a "disposition" of the dairy herd mischaracterizes the nature of the program. The DTP is not itself a disposition of the Bank's collateral because the program does not directly transfer the dairy herd. The DTP is a contractual agreement whereby a dairy operator agrees to get out of the milk production business for 5 years. . . .
>
> Here, the Bachmanns granted the Bank a security interest in their dairy herd and the proceeds of the herd. In other words, they pledged the value received from the sale, exchange or disposition of the dairy herd. The transaction that effected a transfer of the dairy herd–the "disposition" of the collateral–was the slaughter price, money which the Bank received. Once the Bank received the slaughter price, it received its security. Simply put, the Bachmanns' agreement to get out of the dairy business creates no collateral and, therefore, no proceeds.
>
> . . . .
>
> . . . [I]n all the cases dealing with the DTP cited by the parties, the courts have refused to extend the concept of proceeds to include DTP payments. [Citations omitted.] These courts correctly reason that DTP payments are the consideration for the dairy operator's promise to get out of the dairy business for 5 years. The payments are calculated and based on factors peculiar to the dairy operator's business skill and are not directly related to the cows themselves. Decisions dealing with the Milk Diversion Program, the program that preceded the DTP, are in accord. [Citation omitted.]
>
> . . . [T]he majority's holding is inconsistent with the commercial realities in this case. The Bachmanns could have disposed of their herd in a commercially reasonable manner and gotten out of the dairy business at any time. If the Bachmanns had simply

> quit the dairy business, the Bank could not have claimed that its rights under the security agreement were prejudiced because the Bachmanns were no longer producing milk. Thus, when the security agreement was executed, the Bank knew that its security interest was limited to the value of the Bachmanns' herd at the time of disposition.

*Rainier National Bank v Bachmann*, 757 P.2d 979, 985-85 (Wash. 1988) (Dore, J., dissenting).

Accordingly, "proceeds" do not include amounts necessary to compensate for the losses to a business due to the loss of use of the collateral. CPCA's security interest does not attach to amounts recovered on account of Certified's business interruption losses from the fire.

Next, CPCA argues that its security interest attached to the Rothschild and ComEd commercial tort claims because: (1) documents extrinsic to the Security Agreement given by Certified to LaSalle concerning the Rothschild and ComEd actions effectively amended the security agreement, allowing LaSalle's security interest to attach to these commercial tort claims, or (2) under the Composite Documents Rule LaSalle's security interest attached to these two commercial tort claims.

As to CPCA's first argument, Trustee claims that this issue is waived because it was not raised in Bankruptcy Court or included in CPCA's amended designation of the record on appeal. This court need not consider Trustee's waiver argument because even if this issue is not waived, the Trustee will prevail on its merits. Thus, the Bankruptcy Court's judgment that the Security Agreement did not attach the Rothschild and ComEd commercial tort claims is affirmed.

Section 6.15 of the Second Amended Security Agreement reads in part, "Borrower shall notify Lender promptly upon becoming aware of any Commercial Tort Claim of Borrower which may arise, which notice shall constitute Borrower's authorization to amend <u>Schedule B</u> to add such Commercial Tort Claim." Thus, section 6.15 states that notice from Certified of

07 C 702

pending commercial tort claims gives LaSalle authorization to amend Schedule B. However, such notice does not, in and of itself, amend Schedule B.

Relying on Section 6.15, CPCA argues that documents extrinsic to the Security Agreement that reference the Rothschild and ComEd actions given by Certified to LaSalle constituted sufficient notice to LaSalle such that LaSalle's security interest attached to the Rothschild and ComEd commercial tort claims. CPCA argues that the failure to amend Schedule B was a "silly oversight" that is of no consequence. CPCA's characterization of the failure to amend Schedule B as a "silly oversight" does not further its cause as the plain language of the Security Agreement requires amendment of Schedule B to add a commercial tort claim to the collateral securing the loan.

CPCA argues that Illinois law does not require commercial tort claims to be described in detail for a security interest to attach them. According to 810 Ill. Comp. Stat. 5/9-108(a), "[e]xcept as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described [as collateral]." However, "a description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of . . . a commercial tort claim." 810 Ill. Comp. Stat. 5/9-108(e)(1). The official comments state that "a description [of a commercial tort claim] is sufficient if it satisfies subsection (a) and contains a descriptive component beyond the "type" alone. 810 Ill. Comp. Stat. 5/9-108 cmt. 5. CPCA is correct in that the level of specificity necessary when describing collateral in a security agreement is relatively low, even for a commercial tort claim. But, LaSalle failed to include any mention whatsoever of the commercial

9

tort claims it now wishes this Court to hold included in Schedule B. The Security Agreement failed to meet Illinois' description requirement for commercial tort claims as collateral.

CPCA also urges this Court to conclude that LaSalle's security interest attached to the Rothschild and ComEd commercial tort claims via the Composite Documents Rule. Under the Composite Documents Rule, even when two parties do not execute a written security agreement, courts may nonetheless hold that a security agreement exists between the parties if the parties' other documents demonstrate that they intended to enter into a valid security agreement that meets the requirements of UCC Section 9-203. *See In Re Outboard Marine Corp.,* 300 B.R. 308, 323 (Bankr. N.D. Ill. 2003). CPCA's argument that the Composite Documents Rule applies in this case is misplaced. Courts use the Composite Documents Rule to create a security agreement when a collection of documents, taken as a whole, suggest that the parties intended to create a security agreement; not to amend an existing security agreement. *See In Re Outboard Marine Corp.,* 300 B.R. 308; *see In Re Sabol,* 337 B.R. 195 (Bankr. C.D. Ill. 2006). Furthermore, LaSalle and Certified included an Entire Agreement Clause stating that "[t]his Agreement contains the entire agreement of the parties as to the subject matter hereof" and that the agreement can only be amended through writings signed by the Lender. Here, there is no question that the parties intended a security agreement. The question is whether certain property is included in the personal property to which the security agreement applies. This court is of the opinion that CPCA may not invoke the Composite Documents Rule to supplement its existing security agreement to include additional assets when it had ample opportunity to include them by simply amending Schedule B. LaSalle's failure to amend Schedule B of its Security Agreement to include the Rothschild and ComEd claims is fatal to CPCA's argument. See *Matter of*

07 C 702

*Schmaling*, 783 F.2d 680, 682 (7th Cir. 1986) ("[A] security interest granted by a debtor to a creditor is limited strictly to the property or collateral described in the security agreement.")

As to CPCA's "payment intangibles" issue, even though CPCA included this issue in its amended designation of the record on appeal it never briefed it, so that issue is waived. *See Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs,* 957 F.2d 302, 305 (7th Cir. 1992) (raising an issue without briefing it waives the issue).

**ORDERED**: The judgment of the United States Bankruptcy Court for the Northern District of Illinois is affirmed in part and reversed in part. The portion of the judgment holding that Trustee has exclusive right, title and interest to the Rothschild settlement is reversed. The judgment of the Bankruptcy Court is in all other respects affirmed.

ENTER:

_____
GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: December 12, 2007